1    TAYLOR J. HOWARD, ESQ. (SBN 311275)
      JAKE Y. JUNG, ESQ. (SBN 297686)
2    **A.E.I. LAW, P.C.**
      7755 Center Avenue, Suite 1100
3    Huntington Beach, CA 92647
      Telephone: (888) 423-4529
4    Email:     taylor@aeilaw.com
              jake@aeilaw.com
5
      Attorney for Plaintiff
6    AVA NEAL

7              **UNITED STATES DISTRICT COURT**

8     **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| AVA NEAL, an individual, | **Case No.:** |
| Plaintiff, | |
| vs. | **COMPLAINT FOR:** |
| CHRYSTELLE GOODING, an individual; and SOLAR BEING JEWELRY LLC, a California limited liability company, | **1. COPYRIGHT INFRINGEMENT**<br>**2. FALSE DESIGNATION OF ORIGIN/UNFAIR COMPETITION**<br>**3. COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**<br>**4. UNFAIR COMPETITION**<br>**5. DEFAMATION**<br>**6. FALSE LIGHT** |
| Defendants. | |
| | **JURY TRIAL DEMANDED** |

1

Plaintiff AVA NEAL p/k/a "Kwiin Ava" (the "Plaintiff"), by and through her undersigned counsel, for her Complaint against Defendants CHRYSTELLE GOODING p/k/a "shesasolarbeing" or "Solar" and SOLAR BEING JEWELRY LLC (collectively "Defendant"), alleges as follows:

## JURISDICTION AND VENUE

1.    This is a civil action arising under the laws of the United States, including the Copyright Act, 17 U.S.C. §§ 101 et seq.., and the Lanham Act, 15 U.S.C. §§ 1051 et seq., as well as supplemental claims under the statutory and common law of the State of California.

2.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because this action arises under the copyright laws and trademark laws of the United States.

3.    This Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

4.    Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1400(a) because a substantial part of the events or omissions giving rise to the claims occurred in this District and because Defendant resides in and is subject to personal jurisdiction in this District.

///

///

2

1

**INTRODUCTION**

2     5.    Plaintiff is a pioneering artist who created a series of related artistic

3 works, consisting of her distinctive style of three-dimensional sculptures using afro-

4 textured hair as the artistic medium. She uses both her own hair that is still attached

5 to her head, as well as detached, shed hair to create these sculptures and add

6 dimension to her sculptures, demonstrating an artistic choice. She published original

7 visual works depicting those sculptures, achieving substantial public recognition and

8 brand associations.

9     6.    Plaintiff's copyrighted sculptures form a series of related works that

10 showcase her pioneering use of afro-textured hair as the sculptural medium. Each

11 work builds upon and expands her artistic practice, reflecting her unique vision in

12 using both attached and detached hair to create three-dimensional sculptural forms.

13     7.    In connection with these sculptural works, Plaintiff has developed and

14 promoted a series of trademarks that identify and distinguish her artistry and brand

15 in the marketplace. This "puff" family of marks includes, without limitation, *Star*

16 *Puff*, *Flower Puff*, *Heart Puff*, and *Butterfly Puff* (collectively referred to herein as

17 the "Puff Series Marks"), all of which have come to signify Plaintiff's distinctive

18 brand and afro-sculptural art.

19     8.    Plaintiff has further developed a unique and inherently distinctive trade

20 dress in connection with her afro-sculptural works, which serves as a source

21 identifier for her brand. This trade dress consists of three-dimensional Afro

3

1   sculptures formed into recognizable artistic shapes, including (but not limited to) the

2   Puff Series Marks. Plaintiff's natural Afro-textured hair is sculpted into bold shapes

3   that are arranged and trimmed to clearly delineate the outline of each sculpture,

4   creating a striking sculptural design atop the wearer's head. The sculpture's

5   appearance is consistently presented in a uniform solid color (the natural black hair

6   of the wearer), although it may also incorporate coloring, wax, or other pigments

7   and materials to enhance the distinctiveness of the shape or pattern. This

8   configuration, without the addition of wording, logos, or other adornments,

9   constitutes Plaintiff's distinctive trade dress, which has become uniquely associated

10  with her, her brand and her body of work in the minds of the public.

11       9.    Defendant unlawfully appropriated Plaintiff's distinctive sculptures

12  and likeness, published false and misleading statements concerning Plaintiff and the

13  origin of those works of art, and used Plaintiff's Puff Series Marks and trade dress.

14       10.   Defendant has willfully created and distributed replicas, imitations, and

15  unauthorized derivative works of Plaintiff's sculptures, misappropriating Plaintiff's

16  creative expression and goodwill, and has commercially exploited products derived

17  from Plaintiff's original works through online platforms and crowdfunding

18  campaigns, all while also using Plaintiff's Puff Series Marks and trade dress, to

19  Plaintiff's detriment.

20

21

4

1    11.    Plaintiff brings this action to recover damages and injunctive relief for

2    Defendant's violations of federal copyright law, the Lanham Act, and related

3    California law.

4                                    **PARTIES**

5    12.    Plaintiff AVA NEAL, professionally known as "Kwiin Ava"

6    ("Plaintiff"), is an individual residing in Georgia. Plaintiff is an artist and content

7    creator whose original three-dimensional sculptures using afro-textured hair as the

8    artistic medium and visual works have been widely published and recognized.

9    13.    Defendant CHRYSTELLE GOODING, also known online as

10    "shesasolarbeing" ("Defendant Gooding"), is an individual residing in Los Angeles,

11    California. Defendant Gooding is the founder, owner, and controlling member of

12    SOLAR BEING JEWELRY LLC and, on information and belief, directs and controls the

13    acts of infringement and other misconduct alleged herein.

14    14.    Defendant SOLAR BEING JEWELRY LLC ("Defendant LLC") is a

15    California limited liability company owned and controlled by Defendant Gooding.

16    On information and belief, Defendant LLC does business under the names "Solar

17    Being" and "shesasolarbeing," including operating social-media accounts, online

18    shops, and crowdfunding campaigns through which the misconduct described herein

19    has been carried out.

20    15.    Defendant Gooding and Defendant LLC are referred to collectively

21    herein as "Defendant".

5

1

**FACTUAL ALLEGATIONS**

2     16.    Plaintiff realleges and incorporates by reference the preceding
3     paragraphs as though fully set forth herein.

4     17.    Plaintiff is an artist and content creator who, since as early as
5     September 8, 2021, has created and published original three-dimensional sculptures
6     using afro-textured hair as the artistic medium and related visual works across
7     social-media platforms.

8     18.    Plaintiff's sculptures include, among many others, star, heart, butterfly,
9     and flower-shaped three-dimensional sculptures using afro-textured hair as the
10    artistic medium, titled "Star Puff," "Heart Puff," "Butterfly Puff," and "Flower Puff"
11    respectively, creating a series of trademarks to identify Plaintiff's related sculptural
12    creative works. Plaintiff's photographs and videos depicting these sculptures reflect
13    creative decisions in styling, arrangement, and overall composition.

14    19.    Plaintiff's photographs and video recordings of these sculptures
15    constitute original works of authorship fixed in a tangible medium of expression,
16    subject to protection under the Copyright Act.

17    20.    Plaintiff's works achieved substantial online viewership and
18    engagement. By 2023, Plaintiff's social-media accounts had accumulated hundreds
19    of millions of views, with her TikTok account approaching one million followers.
20    Plaintiff's works have been widely recognized and led to collaborations with
21    national brands including Disney, Sony, Hot Topic, and other companies.

6

21.    As a result of her widespread exposure and distinctive artistic style, Plaintiff's sculptures became associated by members of the public with Plaintiff as their source.

22.    Plaintiff's distinctive sculptures and the names she uses to identify them serve to distinguish her goods and services in commerce and are recognized by consumers as associated with Plaintiff.

23.    Plaintiff has used her distinctive sculptures and names, including but not limited to "Star Puff," "Butterfly Puff," "Heart Puff," and "Flower Puff", in commerce through social-media promotion, brand collaborations, and public appearances. Plaintiff also provides fantasy hair sculpting and consulting services, and members of the public associate her sculptures and the names she uses to identify them with Plaintiff as the source of those goods and services.

24.    Defendant initially reached out to Plaintiff proposing a potential collaboration. Although Plaintiff was open to the idea, the collaboration did not occur, and Defendant subsequently began making negative references to Plaintiff by implication on social media.

25.    Defendant Gooding and Plaintiff have never met, nor have they ever had a voice conversation.

26.    On or about September 2023, Plaintiff's TikTok account, then followed by nearly one million users, was banned by TikTok for reasons not made clear to Plaintiff. The loss of this account deprived Plaintiff of a significant platform for her

7

1   artistic expression, professional opportunities, and the goodwill she had built with

2   her audience, forcing Plaintiff to start a new TikTok account from scratch.

3       27.    Shortly thereafter, beginning in or about December 2023, Defendant

4   Gooding seized upon the opportunity to exploit Plaintiff's absence from social

5   media and to trade on Plaintiff's recognition and goodwill. Defendant Gooding

6   began mimicking Plaintiff's distinctive style by posting in Plaintiff's likeness,

7   including imitating Plaintiff's art sculptures and creating replicas, imitations, and

8   unauthorized derivative works of Plaintiff's sculptures while also utilizing

9   Plaintiff's Puff Series Marks.

10      28.    Defendant Gooding engaged in this conduct willfully and with intent

11  to mislead consumers, including by counterfeiting Plaintiff's trade dress and

12  trademarks and passing off her infringing works as if they were associated with,

13  sponsored by, or affiliated with Plaintiff. Defendant's conduct has caused actual

14  consumer confusion and is likely to continue to cause consumer confusion and

15  mistake in violation of the Lanham Act and related state law, as further alleged

16  herein.

17      29.    In or about October 2024, Defendant published a defamatory and

18  disparaging video about and pertaining to Plaintiff (the "Solar Video"). In the Solar

19  Video, Defendant asserted that Plaintiff was "unkind," "threatened," and acting out

20  of "ego," and stated, "please don't try to lie on me and make it seem like I only exist

21  because of you."

8

30.     Defendant's video, though not naming Plaintiff explicitly, referred to Plaintiff and was understood by viewers to be directed at Plaintiff. For example, on Tik Tok the Solar Video's metadata showed "Kwiin Ava" in the search bar of the Solar Video, making it clear to anyone that viewed the video that it was about Plaintiff. Furthermore, the metadata was clickable and brought the audience directly to Plaintiff's Tik Tok page. Additionally, there were many "spin-off" videos from other users that reference the Solar Video, and name Plaintiff and show photos of both Plaintiff and Defendant Gooding.

31.     The Solar Video was viewed approximately 2.7 million times on Tik Tok and over 1 million times on Instagram.

32.     The Solar Video generated thousands of comments, many of which were derogatory toward Plaintiff.

33.     After many commenters began disparaging Plaintiff as a result of Defendant's Solar Video, Defendant fomented continued harassment of Plaintiff by participating in the disparaging comments and encouraging commenters, replying in agreement to their negative comments and supporting a campaign by her followers to continue commenting on Plaintiff's channels.

34.     Many viewers who saw the Solar Video with the meta data "Kwiin Ava" with a live link to Plaintiff's Tik Tok page, then visited Plaintiff's social-media channels and posted disparaging and harassing comments directed at Plaintiff.

35.     These comments accused Plaintiff of dishonesty and attacked her

9

character, repeating and amplifying the themes of the Solar Video.

36.    Defendant Gooding "liked" and commented many of these disparaging comments, calling Plaintiff a narcissist, ego-filled, etc., further encouraging commenters to continue the character assassination conduct.

37.    Plaintiff was forced to devote substantial time over the course of several days to deleting large numbers of such comments from her channels in order to protect her online presence and personal well-being.

38.    The comments caused reputational harm by portraying Plaintiff as dishonest and untrustworthy.

39.    The volume and tone of the comments were designed to insult Plaintiff and to deter her from defending her intellectual property, causing emotional distress.

40.    The flood of harassing messages disrupted Plaintiff's ability to engage with her audience by spamming her channels and causing members of her audience to question their connection with her on the platform.

41.    Shortly after publication of the Solar Video, Defendant began marketing hair-extension "puffs" and related products distributing replicas, imitations, and unauthorized derivative works of Plaintiff's sculptures. Defendant's campaign and promotional materials included a product called the "Star Puff," the same name Plaintiff had long used to identify her star-shaped three-dimensional sculpture.

42.    In or about April and May 2025, Defendant launched and promoted a

10

1  crowdfunding campaign on Kickstarter to solicit funds for these replicas, imitations,

2  and unauthorized derivative works of Plaintiff's sculptures. The campaign raised

3  approximately $37,926 from hundreds of backers.

4      43.    Defendant's Kickstarter campaign included offerings of "Star Puff,"

5  "Butterfly Puff," "Heart Puff," and "Flower Puff" hair-extension replicas,

6  imitations, and unauthorized derivative works of Plaintiff's sculptures, as well as

7  jewelry, shea butter, and other items. On information and belief, Defendant

8  promoted the campaign through social-media accounts operated under the name

9  "shesasolarbeing" and through other channels.

10      44.    Defendant's marketing materials and campaign promotions were likely

11  to cause consumers to associate the source, sponsorship, or approval of Defendant's

12  replicas, imitations, and unauthorized derivative works of Plaintiff's sculptures with

13  Plaintiff and her well-known sculptures.

14      45.    Defendant has made inconsistent statements about the origin of its

15  sculptures. At times, Defendant has denied drawing inspiration from Plaintiff, and

16  at other times Defendant has admitted drawing such inspiration.

17      46.    Beginning in May 2025, Plaintiff, through prior counsel, served written

18  demands on Defendant concerning the Solar Video, the commercialization of

19  replicas, imitations, and unauthorized derivative work "puff" products derived from

20  Plaintiff's sculptures, together with related unlawful conduct.

21      47.    Defendant, through counsel, denied wrongdoing and refused to cease

11

its conduct, asserting that Plaintiff's sculptures were not protectable and that Defendant's statements were protected expression.

48.     Although Defendant has removed the Solar Video from Instagram, the Solar Video is still active on Tik Tok as of the date of this complaint. The belated removal from one platform, however, does not cure the harm already inflicted on Plaintiff, as the video had already been viewed (millions of times), shared, and relied upon by third parties.

49.     On two separate occasions, by way of answers to the cease and desist letter that Plaintiff sent to Defendant, Defendant threatened to make additional videos, which would seem to indicate Defendant's understanding of the harm that such videos created as she used it as a threat or leverage. Defendant's actions here would seem to underscore both her knowledge of wrongdoing and the continuing damages caused by her defamatory statements.

50.     The parties engaged in settlement discussions during May, June, and July 2025 but were unable to resolve the matter.

51.     Plaintiff has pursued protection of her intellectual-property rights. With respect to her sculpture identified as "Star Puff," Plaintiff has submitted an application, deposit, and fee for registration of this sculptural work to the United States Copyright Office.

52.     Defendant's conduct has caused and continues to cause harm to Plaintiff as follows:

12

(a)    The Solar Video and the resulting wave of disparaging comments damaged Plaintiff's reputation by portraying her as dishonest and untrustworthy.

(b)    The comments and harassment caused Plaintiff emotional distress and disrupted her ability to engage with her audience.

(c)    Defendant's marketing and sale of "Star Puff" and other replica, imitation, and unauthorized derivative "puff" products derived from Plaintiff's sculptures, marketed under the same names as Plaintiff's sculptures have diverted goodwill and consumer recognition associated with Plaintiff's work to Defendant.

(d)    Defendant has been unjustly enriched through sales and crowdfunding tied to sculptures and branding associated with Plaintiff.

53.    Unless enjoined, Defendant will continue to exploit Plaintiff's sculptures and goodwill in ways that will cause further irreparable harm, including:

(a)    Ongoing promotion and sale of replica, imitation, and unauthorized derivative "puff" products derived from Plaintiff's sculptures under the same names as Plaintiff's sculptures, diverting goodwill and consumer recognition.

(b)    Continued dissemination of the Solar Video, reinforcing the false implication that Plaintiff is dishonest and untrustworthy.

(c)    Additional reputational harm, consumer confusion, and loss of goodwill that cannot be fully remedied by monetary damages alone.

13

1                                    **FIRST CAUSE OF ACTION**

2                                        **Copyright Infringement**

3                                        **(17 U.S.C. § 501 et seq.)**

4          54.    Plaintiff realleges and incorporates by reference the preceding

5     allegations as though fully set forth herein.

6          55.    Plaintiff is the author of original works of authorship, including three-

7     dimensional sculptures using afro-textured hair as the artistic medium and related

8     photographs and video recordings, which are fixed in a tangible medium of

9     expression and subject to protection under the Copyright Act.

10         56.    Plaintiff has complied with the statutory requirements of the Copyright

11    Act by submitting an application, deposit, and fees for registration of the Star Puff

12    work to the United States Copyright Office.

13         57.    Defendant had access to Plaintiff's works and, without authorization,

14    reproduced, distributed, and created unauthorized derivative works based on them.

15    Defendant marketed and sold these replica, imitation, and unauthorized derivative

16    "puff" products derived from Plaintiff's sculptures, including a "Star Puff" hair-

17    extension product, that copied Plaintiff's original expression in her sculptures as

18    well as her Puff Series Marks.

19         58.    Defendant's acts constitute copyright infringement under 17 U.S.C. §

20    501.

21         59.    As a direct and proximate result of Defendant's conduct, Plaintiff has

                                                 14

1  suffered and continues to suffer damages, including loss of goodwill and unjust

2  enrichment to Defendant. Plaintiff is entitled to recover actual damages and any

3  profits of Defendant attributable to the infringement, pursuant to 17 U.S.C. § 504(b).

4      60.    Plaintiff has no adequate remedy at law for Defendant's continued

5  infringement because monetary damages cannot fully compensate for the ongoing

6  loss of goodwill, the dilution of the distinctiveness of Plaintiff's works, and the

7  continuing risk of unauthorized copying and distribution. Plaintiff is therefore

8  entitled to injunctive relief pursuant to 17 U.S.C. § 502, including an order

9  prohibiting Defendant from reproducing, distributing, or otherwise exploiting

10  Plaintiff's works.

11                    **SECOND CAUSE OF ACTION**

12            **False Designation of Origin/Unfair Competition**

13                      **(15 U.S.C. § 1125(a))**

14      61.    Plaintiff realleges and incorporates by reference the preceding

15  allegations as though fully set forth herein.

16      62.    Plaintiff's distinctive three-dimensional sculptures using afro-textured

17  hair as the artistic medium and the Puff Series Marks she uses to identify them,

18  including "Star Puff," and her trade dress, function as source identifiers in

19  commerce. Through widespread social-media promotion, brand collaborations,

20  fantasy hair sculpting and consulting services, and public recognition, these

21  sculptures and names have acquired distinctiveness and are associated by consumers

15

1 | with Plaintiff.

2 |     63.    Defendant, without authorization, marketed, promoted, and sold
3 | replica, imitation, and unauthorized derivative "puff" hair-extension products
4 | derived from Plaintiff's sculptures using the Puff Series Marks. Defendant's use of
5 | the Puff Series Marks and replica, imitation and unauthorized derivative sculptures
6 | has caused actual consuming confusion in commerce and is likely to continue to
7 | cause confusion, mistake, or deception as to the affiliation, connection, or
8 | association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval
9 | of Defendant's imitation products.

10 |     64.    Defendants' unlawful conduct has caused actual confusion among
11 | consumers. By way of example, reputable businesses such as *Essence Magazine*
12 | published online content crediting Defendant Gooding as the originator of the "puff"
13 | sculptures, demonstrating that confusion exists not only among ordinary consumers
14 | but also at the professional and commercial level. There are a number of other
15 | instances where people have commented on various social media posts, confusing
16 | the two. Courts have long recognized that evidence of actual confusion is the best
17 | evidence of likelihood of confusion. Defendant's conduct constitutes false
18 | designation of origin and unfair competition in violation of § 43(a) of the Lanham
19 | Act, 15 U.S.C. § 1125(a).

20 |     65.    As a direct and proximate result of Defendant's conduct, Plaintiff has
21 | suffered and continues to suffer damages, including reputational injury, diversion of

1    goodwill, and unjust enrichment to Defendant. Plaintiff is entitled to recover

2    damages and Defendant's profits under 15 U.S.C. § 1117(a).

3        66.    Plaintiff has no adequate remedy at law for Defendant's continued

4    conduct because monetary damages cannot fully compensate for the loss of

5    consumer recognition, the diversion of goodwill, and the ongoing risk of consumer

6    confusion in the marketplace. Plaintiff is therefore entitled to injunctive relief under

7    15 U.S.C. § 1116, including an order prohibiting Defendant from marketing,

8    promoting, or selling imitation, replica, or unauthorized derivative "puff" products

9    derived from Plaintiff's sculptures, and using Plaintiff's sculptures, Puff Series

10    Marks and trade dress.

11                 **THIRD CAUSE OF ACTION**

12      **Common Law Trademark Infringement and Unfair Competition**

13                 **(California Common Law)**

14        67.    Plaintiff realleges and incorporates by reference the preceding

15    allegations as though fully set forth herein.

16        68.    Plaintiff has used her distinctive sculptures, Puff Series Marks,

17    including "Star Puff," and trade dress, in commerce through social-media

18    promotion, brand collaborations, fantasy hair sculpting and consulting services, and

19    public recognition. These sculptures and names identify Plaintiff as the source of her

20    goods and services and have acquired goodwill and distinctiveness among

21    consumers.

17

69.    Defendant, without authorization, marketed, promoted, and sold replica, imitation, and unauthorized derivative hair-extension "puff" products derived from Plaintiff's sculptures and using the Puff Series Marks, which are identical to the names Plaintiff has long used for her sculptures. Defendant's conduct has caused actual consumer confusion and is likely to cause further consumer confusion, mistake, or deception as to the source, sponsorship, or approval of Defendant's products.

70.    Defendant's conduct constitutes trademark infringement and unfair competition under California common law.

71.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages, including reputational injury, diversion of goodwill, and unjust enrichment to Defendant.

72.    Plaintiff has no adequate remedy at law for Defendant's continued infringement and unfair competition because monetary damages cannot fully compensate for the loss of goodwill, consumer recognition, and the risk of continued confusion in the marketplace. Plaintiff is therefore entitled to injunctive relief prohibiting Defendant from marketing, promoting, or selling replica, imitation, and unauthorized derivative "puff" products derived from Plaintiff's sculptures, using Plaintiff's sculptures, Puff Series Marks, and trade dress.

///

///

18

## FOURTH CAUSE OF ACTION

### Unfair Competition

### (Cal. Bus. Prof. Code § 17200 et seq.)

73.    Plaintiff realleges and incorporates by reference the preceding allegations as though fully set forth herein.

74.    Defendant has engaged in unlawful, unfair, and fraudulent business practices within the meaning of California Business and Professions Code § 17200.

75.    Defendant's conduct, including the unauthorized marketing and sale of replica, imitation, and unauthorized derivative "puff" products derived from Plaintiff's sculptures under the Puff Series Marks as Plaintiff's sculptures and the dissemination of misleading statements about Plaintiff, constitutes unlawful conduct because it violates the Copyright Act, the Lanham Act, and California common law governing trademark infringement and unfair competition, and defamation.

76.    Defendant's conduct further constitutes unfair and fraudulent business practices because it is likely to deceive consumers into believing that Defendant's replica, imitation, and unauthorized derivative "puff" products are associated with, sponsored by, or approved by Plaintiff, thereby misleading consumers and diverting goodwill and consumer recognition away from Plaintiff.

77.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered economic injury, including loss of goodwill and consumer recognition, and Defendant has been unjustly enriched.

19

78.   Plaintiff seeks restitution and injunctive relief as authorized by California Business and Professions Code §§ 17203 and 17204.

### FIFTH CAUSE OF ACTION

#### Defamation

#### (California Common Law)

79.   Plaintiff realleges and incorporates by reference the preceding allegations as though fully set forth herein.

80.   In the Solar Video, Defendant stated that Plaintiff was "unkind," "threatened," and acting out of "ego," and further accused Plaintiff of lying by asserting, in reference to Plaintiff's previous statements, "please don't try to lie on me and make it seem like I only exist because of you."

81.   Although Defendant did not identify Plaintiff by name, the Solar Video referred to Plaintiff and viewers understood it to be directed at Plaintiff. For example, on Tik Tok the Solar Video's metadata showed "Kwiin Ava" in the search bar of the Solar Video, making it clear to anyone that viewed the video that it was about Plaintiff. Furthermore, the metadata was clickable and brought the audience directly to Plaintiff's Tik Tok page. Additionally, there were many "spin-off" videos from other users that reference the Solar Video, and name Plaintiff and show photos of both Plaintiff and Defendant Gooding.

82.   The Solar Video was viewed approximately 2.7 million times on Tik Tok and over 1 million times on Instagram.

20

83.    The Solar Video generated thousands of comments, many of which were derogatory toward Plaintiff.

84.    After many commenters began disparaging Plaintiff as a result of Defendant's Solar Video, Defendant fomented continued harassment of Plaintiff by participating in the disparaging comments and encouraging commenters, replying in agreement to their negative comments and supporting a campaign by her followers to continue commenting on Plaintiff's channels.

85.    Many viewers who saw the Solar Video with the meta data "Kwiin Ava" with a live link to Plaintiff's Tik Tok page, then visited Plaintiff's social-media channels and posted disparaging and harassing comments directed at Plaintiff.

86.    These comments accused Plaintiff of dishonesty and attacked her character, repeating and amplifying the themes of the Solar Video.

87.    Defendant Gooding "liked" and commented many of these disparaging comments, calling Plaintiff a narcissist, ego-filled, etc., further encouraging commenters to continue the character assassination conduct.

88.    The statements in the Solar Video conveyed a false and defamatory meaning, including that Plaintiff was dishonest, hostile, and undeserving of her reputation and recognition.

89.    Defendant published these statements negligently, recklessly, and with knowledge of their falsity or with serious doubts as to their truth. Defendant knew the statements were false or acted with reckless disregard for their truth because

21

1  Defendant herself had previously acknowledged drawing inspiration from Plaintiff's

2  sculptures and nonetheless denied any connection when speaking to the public.

3      90.    Defendant's inconsistent statements—at times admitting that she drew

4  inspiration from Plaintiff's sculptures and at other times denying any connection—

5  demonstrate that she acted with actual malice in publishing the Solar Video, as that

6  term is understood under the First Amendment and California law.

7      91.    As a direct and proximate result of Defendant's conduct, Plaintiff

8  suffered reputational harm, emotional distress, and loss of goodwill. Plaintiff is

9  entitled to recover general and special damages according to proof.

10     92.    Plaintiff has no adequate remedy at law for Defendant's continued

11  dissemination of the Solar Video and the resulting reputational harm, which cannot

12  be fully compensated by monetary damages. Plaintiff is entitled to injunctive relief

13  prohibiting Defendant from publishing or republishing the Solar Video.

### SIXTH CAUSE OF ACTION

**False Light**

**(California Common Law)**

17     93.    Plaintiff realleges and incorporates by reference the preceding

18  allegations as though fully set forth herein.

19     94.    In the Solar Video, Defendant portrayed Plaintiff as "unkind,"

20  "threatened," and acting out of "ego," and further accused Plaintiff of lying by

21  asserting, in reference to Plaintiff's previous statements, "please don't try to lie on

22

1  me and make it seem like I only exist because of you."

2      95.    Although Defendant did not identify Plaintiff by name, the Solar Video

3  referred to Plaintiff and was understood by viewers to be directed at Plaintiff. For

4  example, on Tik Tok the Solar Video's metadata showed "Kwiin Ava" in the search

5  bar of the Solar Video, making it clear to anyone that viewed the video that it was

6  about Plaintiff. Furthermore, the metadata was clickable and brought the audience

7  directly to Plaintiff's Tik Tok page. Additionally, there were many "spin-off" videos

8  from other users that reference the Solar Video, and name Plaintiff and show photos

9  of both Plaintiff and Defendant Gooding.

10      96.    The Solar Video was viewed approximately 2.7 million times on Tik

11  Tok and over 1 million times on Instagram.

12      97.    The Solar Video generated thousands of comments, many of which

13  were derogatory toward Plaintiff.

14      98.    After many commenters began disparaging Plaintiff as a result of

15  Defendant's Solar Video, Defendant fomented continued harassment of Plaintiff by

16  participating in the disparaging comments and encouraging commenters, replying in

17  agreement to their negative comments and supporting a campaign by her followers

18  to continue commenting on Plaintiff's channels.

19      99.    Many viewers who saw the Solar Video with the meta data "Kwiin

20  Ava" with a live link to Plaintiff's page, then visited Plaintiff's social-media

21  channels and posted disparaging and harassing comments directed at Plaintiff.

100.   These comments accused Plaintiff of dishonesty and attacked her character, repeating and amplifying the themes of the Solar Video.

101.   Defendant Gooding "liked" and commented many of these disparaging comments, calling Plaintiff a narcissist, ego-filled, etc., further encouraging commenters to continue the character assassination conduct.

102.   Defendant's statements and implications placed Plaintiff in a false light before the public by conveying that she was dishonest, hostile, and undeserving of her reputation and recognition.

103.   This portrayal would be highly offensive to a reasonable person, regardless of whether the statements are deemed defamatory.

104.   Defendant acted with knowledge of the falsity of the implications or with reckless disregard for the truth, constituting actual malice.

105.   As a direct and proximate result of Defendant's conduct, Plaintiff suffered reputational harm, emotional distress, and loss of goodwill. Plaintiff is entitled to recover general and special damages according to proof.

106.   Plaintiff has no adequate remedy at law for Defendant's continued dissemination of the Solar Video and is entitled to injunctive relief prohibiting Defendant from publishing or republishing the Solar Video.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in her favor and against Defendant as follows:

24

1.    For damages in an amount to be proven at trial, including general, special, and consequential damages, including but not limited to damages for reputational harm, emotional distress, and loss of business opportunities caused by Defendant's conduct;

2.    For disgorgement of Defendant's profits attributable to the infringement and unfair competition;

3.    For restitution of monies wrongfully obtained by Defendant;

4.    For injunctive relief prohibiting Defendant, and all persons acting in concert with Defendant, from:

(a)    reproducing, distributing, marketing, or selling replica, imitation, and unauthorized derivative "puff" products based on Plaintiff's copyrighted works, including the impoundment and destruction of all infringing products already made, pursuant to 17 U.S.C. § 503;

(b)    using Plaintiff's distinctive sculptures and Puff Series Marks, including "Star Puff", her trade dress, and related identifiers, in commerce;

(c)    publishing, republishing, or otherwise disseminating the Solar Video or any substantially similar defamatory or false light content;

5.    For statutory damages and enhanced remedies to the extent permitted by law;

6.    For an award of enhanced and punitive damages based on Defendant's willful and knowing misconduct;

25

7.   For attorneys' fees and costs of suit pursuant to applicable statutes, including but not limited to 17 U.S.C. § 505 and 15 U.S.C. § 1117(a);

8.   For pre-judgment and post-judgment interest as allowed by law; and

9.   For such other and further relief as the Court may deem just and proper.

Dated: October 3, 2025

Respectfully submitted,
A.E.I. Law, P.C

By: /s/ - Taylor J. Howard, Esq.

Taylor J. Howard, Esq.
Attorney for Plaintiff
AVA NEAL

26

1

2

## DEMAND FOR JURY TRIAL

3

Plaintiff hereby demands a trial by jury on all issues so triable.

4

5

Dated: October 3, 2025

Respectfully submitted,
A.E.I. Law, P.C

6

By: /s/ - Taylor J. Howard, Esq.

7

Taylor J. Howard, Esq.
Attorney for Plaintiff

8

AVA NEAL

9

10

11

12

13

14

15

16

17

18

19

20

21