UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 2:25-cv-09475-MCS-MAR | Date January 16, 2026 |
| Title *Neal v. Gooding* | |

Present: The Honorable Mark C. Scarsi, United States District Judge

| Stephen Montes Kerr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE: APPLICATION FOR TEMPORARY RESTRAINING ORDER (ECF NO. 20) AND SEALING ORDER**

Plaintiff Ava Neal filed an ex parte application for a temporary restraining order and for issuance of an order to show cause why a preliminary injunction should not issue. (Appl., ECF No. 20.) Defendants Chrystelle Gooding and Shariece Renee Mance opposed.[1] (Opp'n, ECF No. 25.) The Court heard the application on January 14, 2026. (Mins., ECF No. 24.)

---

[1] The Court considers Defendants' opposition although it lacks a hand signature and is subject to being stricken. *See* Fed. R. Civ. P. 11(a); C.D. Cal. R. 5-4.3.4; *Giebelhaus v. Spindrift Yachts*, 938 F.2d 962, 966 (9th Cir. 1991). In addition, Defendants filed their opposition purportedly on behalf of Solar Being Jewelry LLC and the individual Defendants. However, limited liability companies may not appear in federal court without representation by an attorney. *See, e.g.*, *D-Beam Ltd. P'ship v. Roller Derby Skates, Inc.*, 366 F.3d 972, 973–74 (9th Cir. 2004) ("It is a longstanding rule that corporations and other unincorporated associations must appear in court through an attorney." (internal quotation marks omitted)). Accordingly, the Court construes Defendants' opposition as having been submitted by Ms. Gooding and Ms. Mance, individuals who may proceed pro se.

I.  **BACKGROUND**

This is a copyright and trademark infringement case. According to the complaint, Plaintiff is an artist who has created a series of "three-dimensional sculptures using afro-textured hair as the artistic medium." (FAC ¶ 5, ECF No. 11.) In connection with her works, Plaintiff has developed a "puff" family of trademarks, including "Star Puff," "Flower Puff," "Heart Puff," and "Butterfly Puff." (*Id.* ¶ 7.) Plaintiff alleges that Defendants have created unauthorized derivative works, misappropriated Plaintiff's trademarks, and published false and misleading statements. (*Id.* ¶¶ 9–10.) Plaintiff brings claims for (1) copyright infringement, (2) false designation of origin / unfair competition (false endorsement and trade dress), (3) common law trademark infringement and unfair competition, (4) unfair competition, (5) defamation, (6) false light, (7) common law right of publicity (misappropriation of identity), and (8) violation of the right of publicity. (*Id.* ¶¶ 60–127.)

II.  **APPLICATION FOR TEMPORARY RESTRAINING ORDER**

On January 9, 2026, Plaintiff applied for a temporary restraining order. Plaintiff submits that since October 2025, she "has been subjected to a sustained, escalating campaign of online harassment." (Appl. 2.) As detailed in the temporary restraining order application, on November 15, 2025, Plaintiff received a threatening direct message from a third party, (Luton Decl. Ex. B, ECF No. 20), and on November 17, another third party posted two videos to TikTok threatening physical harm to Plaintiff, (*id.* Exs. C–D). After these posts, on November 17, Plaintiff posted on X, formerly known as Twitter, that she had "received multiple videos threatening to find and harm" her. (*Id.* Ex. E.) Approximately 90 minutes later, Ms. Gooding reposted an image of a cat holding a gun. (*Id.* Ex. F.) Plaintiff filed a police report with the Cobb County Police Department in Georgia the next day, November 18. (*Id.* Ex. J.)

Two days later, on November 20, Ms. Gooding posted the reference number of one of Plaintiff's pending trademark applications and two links to the application on X. (*Id.* Ex. G.) A third party replied to Ms. Gooding's post with a screenshot of the application, which contained Plaintiff's full name and address, and a screenshot of the Facebook page of a different woman, who appeared to be Caucasian, by the same name as Plaintiff. (*Id.* Ex. H.) Ms. Gooding replied, "The owner is black." (*Id.*) In addition, on December 8, 2025, Ms. Gooding posted a YouTube video with a description that linked to three of Plaintiff's trademark applications. (*Id.* Ex. K.)

Lastly, Plaintiff cites posts by Ms. Gooding on X that reference the lawsuit, (*id.* Exs. L–M, O), and posts by third parties on YouTube and X threatening Plaintiff, (Luton Decl. Exs. K, N, O). Plaintiff submits that these posts, viewed as a whole, constitute a "sustained campaign" by Defendants "that provoked and amplified racially charged, location-directed threats, creating an imminent risk of real-world violence to Plaintiff." (Appl. 5.)

Plaintiff seeks a temporary restraining order on the basis of (1) true threats, (2) incitement, and (3) violation of California Civil Code section 1708.89, which prohibits doxing. (*Id.* at 6–10.) Plaintiff requests a temporary restraining order requiring immediate native preservation of the accounts and posts identified in the application's exhibits; requiring Ms. Gooding to remove her posts and refrain from publishing Plaintiff's private information, including links to Plaintiff's trademark applications; and authorizing expedited subpoenas to third-party social media platforms regarding the threatening posts. (*Id.*, Prayer for Relief.)

### A. Legal Standard

The standard for granting a temporary restraining order is essentially the same as the standard for granting a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The Ninth Circuit also employs a "version of the sliding scale approach" where "a stronger showing of one element may offset a weaker showing of another." *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, an injunction may issue if the plaintiff shows that serious questions go to the merits, the balance of hardships tips sharply toward the plaintiff, the plaintiff is likely to suffer irreparable injury, and an injunction is in the public interest. *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021).

### B. Discussion

The Court need not consider all the *Winter* elements because two are clearly unmet. *See, e.g., Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (declining to evaluate other *Winter* elements where plaintiff failed to show likelihood

of success on the merits); *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011) (declining to evaluate other *Winter* elements where plaintiffs failed to show irreparable harm).

First, Plaintiff fails to plead theories of true threats, incitement, or violation of California's anti-doxing statute in the operative complaint. (*See* FAC ¶¶ 60–127.) Because Plaintiff rests the application on legal theories not pleaded in the operative complaint, the Court lacks the authority to grant the requested relief. *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015) ("When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction."). Plaintiff is unable to show that she is likely to succeed on the merits of unpleaded claims.

Second, Plaintiff fails to demonstrate that an imminent, irreparable harm will result absent preliminary injunctive relief. "An irreparable harm is one that cannot be redressed by a legal or equitable remedy following trial." *Optinrealbig.com, LLC v. Ironport Sys., Inc.*, 323 F. Supp. 2d 1037, 1050 (N.D. Cal. 2004) (citing *Pub. Util. Comm'n v. Fed. Energy Regul. Comm'n*, 814 F.2d 560, 562 (9th Cir. 1987)). A plaintiff must demonstrate "*immediate* threatened injury." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016) (emphasis added) (internal quotation marks omitted). "[A] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone*, 585 U.S. 155, 159 (2018). A long delay before seeking injunctive relief "implies a lack of urgency and irreparable harm." *Oakland Trib., Inc. v. Chron. Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985); *see also Garcia*, 786 F.3d at 746 (affirming denial of preliminary injunction where Plaintiff waited for months).

According to the application, Plaintiff experienced harassment beginning in October 2025. (Appl. 2.) Plaintiff considered the harassment serious enough to file a police report on November 18, 2025, and a supplemental report on November 25. (Luton Decl. Ex. J.) However, Plaintiff waited more than seven weeks after filing the initial police report to seek a temporary restraining order. Although Plaintiff's application also notes more recent social media posts on December 20, 2025, and January 5, 2026, there is no indication that these posts represent an escalation of the rhetoric used in earlier social media posts dating back to November. Plaintiff relies upon conduct documented in the initial and supplemental reports, including Ms. Gooding's post of a cat holding a gun, (*id.* Ex. F), and a third party's post of a screenshot of her address, (*id.* Ex. H), to support her application.

Moreover, Plaintiff's first amended complaint, filed November 13, alleges much of the same conduct that Plaintiff contends now demonstrates imminent and irreparable harm. For instance, the complaint alleges that Ms. Gooding "fomented and prolonged harassment by actively engaging with and amplifying derogatory commentary," (FAC ¶ 35), and that Plaintiff has received a "flood of harassing messages" from third parties, (*id.* ¶ 42). Plaintiff offers no explanation why she waited until several weeks after filing the first amended complaint and making her police report to seek a temporary restraining order. Her delay undercuts the claimed irreparable harm.

Each of these elements provides an independent basis for denying preliminary injunctive relief.

### C.    Conclusion

Plaintiff's application is denied.

## III.   SEALING ORDER

During the hearing on the application, Plaintiff made an oral motion to seal the application and its accompanying exhibits because they contain Plaintiff's private information, including her residential address.

The public has a "general right to inspect and copy public records and documents, including judicial records and documents." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (internal quotation marks omitted). Consequently, there is a "strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). A party who seeks to seal documents supporting a nondispositive motion must present a "particularized showing under the good cause standard of Rule 26(c)" that "specific prejudice or harm" will result if any individual document is made public. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1180, 1186 (9th Cir. 2006) (internal quotation marks and citation omitted); *see Ctr. for Auto Safety*, 809 F.3d at 1099 (assuming without deciding a motion for preliminary injunction is nondispositive under *Kamakana* framework).[2]

---

[2] The Court's ultimate decision would be the same if the more stringent "compelling reasons" standard applied. *See Kamakana*, 447 F.3d at 1179.

Given that the application materials reveal Plaintiff's private residential address, and Plaintiff rests the application on a perceived threat of doxing, the Court concludes that good cause exists to seal the application and its accompanying exhibits and Defendants' opposition. However, only Plaintiff's private information should be protected from public disclosure under the rationale counsel articulated at the hearing; accordingly, redacted versions of the application papers should be filed to protect the public's right to access the less sensitive records of this proceeding. The Court orders Plaintiff to file redacted versions of the application and opposition materials within seven days. Failure to comply will result in abrogation of the sealing order.

**IT IS SO ORDERED.**